PITTSBURGH SUPPLY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18864. Promulgated December 7, 1928.

*Maynard Teall, Esq.,* for the petitioner.
*James A. O'Callaghan, Esq.,* for the respondent.

OPINION.

ARUNDELL: When the petitioner purchased all the stock of the Ross Mechanical Supply Co. in 1920 a statutory affiliation between the two companies resulted and consequently a consolidated return of income and invested capital was required. Before consolidated invested capital can be computed, there must first be determined, in accordance with section 326 of the Revenue Act of 1918, the invested capital of each member of the affiliated group. *Middlesex Ice Co.*, 9 B. T. A. 156. Whether in this case the invested capital of the Ross Mechanical Supply Co. was sufficient in amount to allow the inclusion of the $15,000 paid-in surplus claimed by the petitioner we do not know, the evidence being insufficient to establish what the invested capital of the Ross Co. was.

Petitioner claims a right to special assessment on the ground of several abnormalities affecting income and invested capital. The first is that valuable intangibles were acquired from the Burson Supply Co., which by reason of the manner in which they were acquired, can not be included in statutory invested capital. It appears from the record of the Burson Supply Co.'s earnings, when compared with its tangible assets, that it did have intangibles of substantial value. With an average of tangibles of little over $70,000, it had an average net income over the years 1917, 1918, and 1919 of about $36,000. The Burson Supply Co. was a going concern, earning substantial profits, and among its assets were customers' lists and the agreement with the Spang Chalfant Co. which were turned over to the petitioner without cost to the latter. The intangible of chief value was the agreement whereby petitioner was enabled to distribute Spang Chalfant oil pipe without handling and warehouse charges which were customary in the sale and distribution of this product. Petitioner needed no capital to handle this pipe because of the arrangement whereby it received payment from its customers in advance of the date payment was due the manufacturer. Petitioner's profit on Spang Chalfant pipe in car load lots was $20,191.03 in 1921.

In 1921 petitioner recovered through various means $110,407.34 of an item of $111,949.31 charged off as a bad debt in 1920 and allowed as a deduction from 1920 income. The entire amount recovered was reported in 1921 income. When the charge-off was made in 1920 the cost of the goods shipped was eliminated from petitioner's books, so that upon the recovery in 1921 the entire amount recovered was reported as income; there was no " cost of goods sold " which was deducted from the amount received as in the case of ordinary sales. Certainly this transaction can not be viewed as one in the ordinary course of business or as one likely to recur. The amount of petitioner's net income as determined by respondent is $109,906.84, or

$500.50 less than the recovery on the bad debt of the prior year. In other words, but for the recovery of the item previously charged off, all of which went into income, the petitioner would have reported no net income in the taxable year. The net income for 1921 may therefore be said to be attributable to business activities of a prior year or years.

The evidence satisfies us of the existence of abnormalities sufficient to entitle petitioner to have its profits taxes computed under section 328.

Reviewed by the Board.

*Judgment will be entered under Rule 62 (c).*